## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 10 2017, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of M.R. & L.R. (Children) and K.M. (Father) & A.R. (Mother);

A.R. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 10, 2017

Court of Appeals Case No.
91A02-1705-JT-1196

Appeal from the White Circuit Court

The Honorable Robert W. Thacker, Judge

Trial Court Cause No.
91C01-1609-JT-17
91C01-1609-JT-18

**May, Judge.**

[1] A.R. ("Mother") appeals the termination of her parental rights to M.R. and L.R. (collectively, "Children"). She argues the Department of Child Services ("DCS") did not present sufficient evidence the conditions under which Children were removed from her care would not be remedied and termination was in Children's best interests. We affirm.

## Facts and Procedural History

[2] Mother and K.M. ("Father")[1] (collectively, "Parents") are parents of M.R. and L.R., born November 3, 2012, and May 30, 2014, respectively. On January 4, 2015, Father hit Mother in the face twice in the presence of Children. Mother called the police, and the police arrested Father for domestic violence. DCS received a report of the domestic violence incident and investigated, but did not remove Children from Mother's care.

[3] Father was deported to El Salvador on January 12, 2015. Mother did not have a job, and the family was evicted from its home on January 25. Mother and Children went to live with Mother's friends, a married couple. On February 1, 2015, Mother and Children were forced to leave this living arrangement after a domestic disturbance involving Mother.

---

[1] Father's parental rights were also terminated, but he does not participate in this appeal.

[4] DCS investigated and discovered Mother's living arrangement was unsuitable for Children because it did not meet minimum health and safety standards, Children were not appropriately clothed, and Mother "barely had any supplies for them," (Tr. at 23), such as diapers and wipes. On February 2, 2015, DCS filed petitions to adjudicate Children as Children in Need of Services ("CHINS") and an emergency request to remove Children from Mother's care. The trial court approved DCS's emergency request to remove Children from Mother's care and place them in foster care, where they have remained during subsequent proceedings.

[5] On March 17, 2015, Mother admitted Children were CHINS. On March 25, the State charged Mother with three counts of Level 6 felony fraud, one count of Level 6 felony theft, and one count of Class A misdemeanor theft because Mother allegedly used credit cards that did not belong to her. On April 10, the trial court held a dispositional hearing, and on April 17, 2015, entered its dispositional orders in the CHINS cases, requiring Mother to complete parenting and domestic violence assessments and follow all recommendations; refrain from the use of illegal substances or alcohol; submit to random drug screens; attend visitation with Children; participate in home-based case management and follow all recommendations; maintain safe, stable, and suitable housing; maintain a legal and stable source of income; abide by the terms of her probation; obey the law and not commit any acts of domestic violence; and complete an evaluation of her cognitive ability.

Mother participated in services from February 2015 to October 2015. On October 8, 2015, Mother pleaded guilty to three counts of Level 6 felony fraud and served approximately nine months in jail. While incarcerated, Mother attempted to obtain her GED and participated in parenting classes "every other Friday through the White County Jail." (Ex. Vol. III at 89.) Upon her release in September 2016, Mother was referred to George Junior Republic for services.

On September 12, 2016, DCS filed petitions to terminate Mother's rights to Children. From September 1, 2016, to January 20, 2017, Mother was generally non-compliant with services. She attended eight out of nineteen home-based case management meetings, eleven of sixteen individual therapy sessions, and thirteen of eighteen supervised visits with Children. During visits with Children, Mother was "distant." (Tr. at 63.) While Mother engaged with Children, "she really doesn't talk to them much. . . . [S]he scrolls on her telephone a lot. She texts people on her phone. She calls [Father] at least once during the visit." (*Id.*) During one visitation, Mother spent some of the time on the phone with Father "arguing back and forth." (*Id.* at 19.)

In January 2017, Mother reported she had obtained appropriate housing. Upon inspection of the premises, the Family Case Manager ("FCM") described the living conditions as "bare at most." (*Id.* at 32.) On February 28, 2017, the FCM visited Mother at her home and observed "something was different." (*Id.* at 35.) The FCM testified Mother "had slow lethargic movements. Her lips were white and clammy almost. Um - her pupils were the size of pin needles."

(*Id*.) The FCM administered a drug screen and Mother tested positive for cocaine and opiates.

[9] On March 7, 2017, the trial court held a fact-finding hearing on DCS's petitions to terminate Parents' rights to Children. On April 28, 2017, the trial court issued its orders terminating Parents' rights to Children.

# Discussion and Decision

[10] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[11] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely

because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet her parental responsibilities. *Id.* at 836.

[12] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

Mother challenges the court's conclusions the conditions under which Children were removed would not be remedied, the continuation of the parent-child relationship posed a risk to Children, and termination was in the best interests of Children.[2]

### *Reasonable Probability Conditions Would Not Be Remedied*

The trial court must judge a parent's fitness to care for her children at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the

---

[2] The trial court found the conditions under which Children were removed would not be remedied and the continuation of the parent-child relationship posed a threat to Children. DCS does not have to prove both. The statute is written in the disjunctive, and DCS must prove either by clear and convincing evidence. *See* Ind. Code § 31-35-2-4. Because the evidence supports the conclusion there was a reasonable probability conditions leading to Children's removal would not be remedied, we need not address whether the continuation of the parent-child relationship posed a threat to Children's well-being. *See In re L.S.* 717 N.E.2d 204, 209 (Ind. Ct. App. 1999), *reh'd denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002) (because statute is written in the disjunctive, court needs to find only one requirement to terminate parental rights).

requisite reasonable probability" that the conditions will not change. *Lang v. Starke County OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[16] Here, Children were removed from Mother's care due to instability in their housing situation and Mother's lack of employment. Over the course of these proceedings, Mother "had eight different jobs over the last two years," (Tr. at 31), and she worked for no more than two or three months at each job. At the time of the termination hearing, Mother claimed to have a job, but had not provided verification of her wages or length of employment. DCS presented evidence Mother lived "in at least five different towns" during the proceedings but didn't "know specifically [how many] houses." (*Id.* at 32.) At the time of the termination hearing, Mother lived in a duplex that the FCM described as:

> Um - the conditions are bare at most. Um - when I visited the home, there was [sic] three twin size [sic] mattresses that did - that were just piled up. Um - there was a metal bedframe, a little loveseat. There was [sic] no dishes, no plates, no silverware - um - no cups, anything like that. In the refrigerator, I saw like a half gallon of milk and a jar of pickles and a jar of peanut butter so there wasn't any food in the home. She said that she preferred to eat out and so that's why there wasn't very much food in the home.

(*Id.* at 32-3.) Mother also tested positive for illegal drugs approximately one week prior the termination hearing.

[17] When assessing a parent's fitness to care for a child, the trial court should view the parent as of the time of the termination hearing and take into account the changes that have occurred during the proceedings. *In re C.C.*, 788 N.E.2d 847,

854 (Ind. Ct. App. 2003), *trans. denied*. However, the trial court must also "evaluat[e] the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of [a] child." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.

[18] While we recognize Mother had obtained housing and employment at the time of the termination hearing, we cannot ignore her patterns of housing and employment instability. Additionally, Mother tested positive for illegal substances, committed criminal offenses, and was not compliant with services. Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses). We therefore conclude DCS presented sufficient evidence to prove there was a reasonable probability the conditions under which Children were removed from Mother's care would not be remedied.

### Best Interests of Children

[19] In determining what is in the children's best interests, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to

evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the children's best interests. *In re J.S.*, 906 N.E.2d at 236.

[20] In addition to Mother's housing and employment instability, DCS presented evidence Children had been in foster care for two years, were doing well in their current placement, and were receiving services like First Steps that Mother did not provide when Children were in her care. Additionally, the FCM testified termination would be in the best interests of Children because:

> I believe that [Children] need to be provided with a safe and stable environment where there's no more domestic violence and no more law enforcement being brought into the home. That they're not moving from place to place to place every few months, and that they can be provided with meals without having to worry about where it's coming from - um - or who's going to be in their life the next day or who's going to be caring for them that they don't know.

(Tr. at 38-9.)

[21] Mother argues she is bonded with Children and service provider criticism of her interaction with Father via telephone during her supervised visits with Children was unfair because she was "trying to make sure the children also maintained a relationship with their father." (Br. of Appellant at 19.) Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses). Based on

the evidence and testimony, we conclude DCS presented sufficient evidence to prove termination of Mother's parental rights was in the best interests of Children.

# Conclusion

[22] DCS presented sufficient evidence there was a reasonable possibility the conditions under which Children were removed from Mother's care would not be remedied and termination of Mother's parental rights were in Children's best interests. Accordingly, we affirm.

[23] Affirmed.

Barnes, J., and Bradford, J., concur.